# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN O. TORREY,<br><br>                    *Plaintiff*,<br><br>          v.<br><br>STATE OF NEW JERSEY, DEPARTMENT OF LAW AND PUBLIC SAFETY, DIVISION OF CRIMINAL JUSTICE; STEPHEN J. TAYLOR, individually, and in his official capacity as Director of the Division of Criminal Justice; PAUL MORRIS, individually, and in his official capacity as Chief of Investigations, Division of Criminal Justice; STANLEY BEET, individually, and in his official capacity; ROBERT FERRIS, individually, and in his official capacity; DERMOT P. O'GRADY, Esq., individually, and in his official capacity; and JOHN and JANE DOES 1 TO 25, individually and in their official capacities,<br><br>                    *Defendants*. | Civil Action No. 13-1192 (PGS) (TJB)<br><br><br><br>__MEMORANDUM__ |

__SHERIDAN, U.S.D.J.__

This matter comes before the Court on Defendants, State of New Jersey, Department of Law and Public Safety, Division of Criminal Justice ("DCJ"), Stephen J. Taylor, Paul Morris, Stanley Beet, Robert Ferris, and Dermot P. O'Grady's (collectively, "Defendants") Motion to Dismiss Plaintiff John Torrey's ("Torrey" or "Plaintiff") First Amended Complaint ("Amended Complaint") pursuant to FED. R. CIV. P. 12(b)(1) and/or FED. R. CIV. P. 12(b)(6) or for a more definite statement pursuant to FED. R. CIV. P. 12(e) (ECF No. 19). Plaintiff, a former employee of the DCJ, alleges that

the DCJ and the individually named Defendants wrongfully terminated his employment, violated his due process rights and inflicted torts against him in violation of state and federal law. The Court decides this matter without oral argument pursuant to FED. R. CIV. P. 78(b).[1] For the reasons set forth herein, Defendants' Motion to Dismiss is granted in part and denied in part and Defendants' Motion for a more definite statement is denied.

## I.   BACKGROUND

### A.  Parties

Plaintiff John Torrey is a resident of East Windsor, New Jersey. (Compl. at ¶ 1). He was employed in various capacities by the State of New Jersey, Department of Law and Public Safety, Division of Criminal Justice ("DCJ") from January 1998 until his termination on March 30, 2012. (*Id*. at ¶ 2). Defendant DCJ is a division of the State of New Jersey, Department of Law and Public Safety. (*Id*. at ¶ 3). Defendant Stephen J. Taylor, who is being sued individually and in his official capacity, was the former Director of the DCJ and is currently a Superior Court Judge in Essex County, New Jersey. (*Id.* at ¶ 4; Defs.' Br. in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Compl. ("Defs.' Br.") at 1). Defendant Paul Morris, who is being sued individually and in his official capacity, is the Chief of Investigators of the DCJ. (Compl. at ¶ 5; Defs.' Br. at 1). Defendant Stanley Beet, who is being sued individually and in his official capacity, is a Lieutenant and Internal Affairs Officer with the DCJ. (Compl. at ¶ 6; Defs.' Br. at 1). Defendant Robert Ferris, who is being sued individually and in his official capacity, is an investigator with the Internal Affairs Division of the DCJ. (Compl. at ¶ 7; Defs.' Br. at 1). Defendant Dermot P. O'Grady, Esq., who is being sued individually and in his official capacity, is an attorney employed by the State of New Jersey and

---

[1] On March 7, 2014, the Court scheduled a telephone conference to hear oral argument on Defendants' Motion to Dismiss for March 11, 2014. At that time, the parties indicated they were uncertain as to why the conference was scheduled. The docket entry noticing the conference, however, is clear: "Set/Reset Hearings: Telephone conference on Motion 19 to Dismiss Amended Complaint[.]" As the parties have declined their opportunity for oral argument, the Court now decides Defendants' Motion to Dismiss on the papers.

assigned to the DCJ. (Compl. at ¶ 8). John and Jane Does 1 to 25, who are being sued in their individual and official capacities, "were persons whose identities are presently unknown to Torrey and who are believed to have been employed by [D]CJ and to have participated . . . in the wrongful conduct described [in Plaintiff's Amended Complaint] and who thereby caused or contributed to the causing of substantial damage and injury to Torrey." (*Id*. at ¶ 9).

### B.  Factual Background

Plaintiff Torrey was hired by the DCJ in January 1998. (*Id.* at ¶ 14). From January 1998 until October 1999, he worked in various capacities for the DCJ. (*Id*.). From October 2009 until January 24, 2011, Torrey held the position of Acting Lieutenant with the Gangs and Organized Crimes/South Unit of the DCJ. (*Id*. at ¶ 16). From January 24, 2011 until March 2011, Torrey was assigned to the United States Marshal's Regional Fugitive Task Force. (*Id*. at ¶ 17). From March 2011 until his termination on March 30, 2012, Torrey was assigned to the Electronic Surveillance Unit/Evidence Management Unit of the DCJ, where he was responsible for ensuring the security of approximately $1 million in cash, sensitive electronic surveillance equipment and a large volume of items that had been seized, including narcotics. (*Id*. at ¶ 18).

On or about January 24, 2011, while serving as an Acting Lieutenant with the Gangs and Organized Crimes/South Unit of the DCJ, Plaintiff was informed by his immediate supervisor, DCJ Deputy Chief Allan Buecker, that he was required to meet with DCJ Chief Paul Morris to discuss "unspecified allegations against Torrey relating to his alleged conduct in the workplace and officer safety." (*Id*. at ¶ 20). At that meeting, Plaintiff was informed that he was being transferred to the United States Marshal's Regional Fugitive Task Force. (*Id*. at ¶ 21). According to the Plaintiff, Defendant Morris did not provide specific information regarding the allegations mentioned by Bueker. (*Id*.).

Five months later, in June 2011, Plaintiff was informed that he would be sworn in as a Lieutenant on July 5, 2011. (*Id*. at ¶ 22). Four days prior to the scheduled swearing-in, however, Plaintiff was informed by DCJ Deputy Chief Thomas Harrington that would not be sworn in because he "was the principal target of an internal affairs investigation[.]" (*Id*.). According to the Plaintiff, the swearing-in was delayed even though "he was on notice as of February 17, 2011, that he was a [L]ieutenant, effective January 29, 2011, and was being paid accordingly[.]" (*Id*.).

In early October 2011, the DCJ instructed Plaintiff to report to an "interview" on October 26, 2011. (*Id*. at ¶ 23). At the interview, which was conducted by Defendants Lieutenant Stanley Beet and Investigator Robert Ferris, Plaintiff was "shown a target letter that listed six allegations without detail or specifics: hostile workplace; officer safety; green sheets; misuse of a state-issued phone; misuse of a state-issued computer and general mismanagement." (*Id*. at ¶ 24). Plaintiff, who was accompanied at the interview by his Fraternal Order of Police representative Frank Crivelli, Esq., was required to initial the letter, although he was not provided with a copy. (*Id*.). During the interview, Plaintiff requested specifics regarding the allegations leveled against him, however, according to the Plaintiff, none were provided. (*Id*. at ¶ 26).

In December 2011, two months after the interview was conducted, Plaintiff was informed by Defendant Ferris that the Internal Affairs Division of the DCJ had concluded its investigation into the allegations and had submitted its findings to Chief of Investigators Paul Morris. (*Id*. at ¶ 28). Despite the investigation having apparently concluded in December 2011, DCJ Internal Affairs insisted on interviewing Detective Tammy Siano in February 2012 to substantiate the allegations against Plaintiff. (*Id*. at ¶ 29). According to the Plaintiff, "Internal Affairs attempted to badger [Detective] Siano into saying that Torrey had an inappropriate relationship with her at some point in the past." (*Id*.). Plaintiff contends that Detective Siano denied the allegations and suggests that "this

interview was conducted in order to attempt to make timely an investigation that was otherwise untimely under applicable guidelines." (*Id*.).

On March 30, 2012, Plaintiff's employment with the DCJ was terminated "without [him] knowing the specifics of, and [without] having had the opportunity to defend against and refute, the allegations that had been leveled against him[.]"[2] (*Id*. at ¶ 30). Following his termination, Plaintiff sought alternative employment, including a position with the Mercer County Sheriff's Office. (*Id*. at ¶ 31). During his employment search, Plaintiff was allegedly informed that individuals at the DCJ, including Defendant O'Grady, had made "negative comments" about him to a representative of the Mercer County Sheriff's Office. (*Id*. at ¶ 32). Specifically, Plaintiff contends that the representative "was intentionally and wrongfully informed that there were issues involving [him] that were 'borderline criminal,' including sexual harassment, misappropriation and theft of investigative funds and use of state equipment to schedule contacts with one or more escorts or prostitutes[.]" (*Id*. at ¶ 34). These comments were allegedly made after there had been "favorable" initial discussions between the DCJ and the Mercer County Sheriff's Office regarding Plaintiff's prospective hiring. (*Id*.). Plaintiff contends that, as a result of these "false and defamatory" statements, he was not hired by the Mercer County Sheriff's Office. (*Id*. at ¶¶ 35-36). As of the date of the filing of his Complaint, Plaintiff has "continued unsuccessfully in his efforts to find adequate employment." (*Id*. at ¶ 37).

On February 28, 2013, Plaintiff filed a Complaint in the United States District Court for the District of New Jersey. On March 4, 2013 Plaintiff filed a First Amended Complaint consisting of eleven counts against the various Defendants. In Count One, Plaintiff alleges a violation of 42

---

[2] In his Opposition Brief, Plaintiff identifies in greater detail the accusations leveled against him by the DCJ. Specifically, he states that the Defendants "accused him of sexual harassment, misappropriation, theft of investigative funds, use of state equipment to schedule contacts with one or more escorts or prostitutes, and other misconduct." (Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp. Br.") at 8).

U.S.C. § 1983 by all Defendants and seeks a mandatory injunction reinstating his employment at DCJ with all associated back pay, seniority and benefits. Specifically, Plaintiff alleges that he "has a property interest in continued employment with [D]CJ" and he "was deprived of this property interest without due process of law." (*Id.* at ¶ 41-42). Furthermore, Plaintiff alleges that he "has been stigmatized by [D]efendants' conduct, the stigmatizing information having been publicly disclosed, and he has suffered loss of other employment opportunities as a result of the public disclosure." (*Id.* at ¶ 45). In Count Two, Plaintiff alleges a violation of 42 U.S.C. § 1983 by Defendants Taylor, Morris, Beet, Ferris, O'Grady and John and Jane Does 1 to 25 in their individual capacities. In Count Three, Plaintiff alleges a conspiracy to violate 42 U.S.C. § 1983 by the individually named Defendants. In Count Four, Plaintiff alleges New Jersey "common law" due process violations against all Defendants and seeks a mandatory injunction reinstating his employment at DCJ with all associated back pay, seniority and benefits.[3] In Count Five, Plaintiff alleges New Jersey common law due process violations against the individually named Defendants. In Count Six, Plaintiff alleges a state law tortious interference with prospective economic advantage claim against all individually named Defendants. Specifically, Plaintiff alleges that the named Defendants "wrongfully, intentionally and with malice, interfered with [his] economic advantage and other legitimate rights by defaming him to and with the Mercer County Sheriff's Office." (*Id.* at ¶ 64). In Count Seven, Plaintiff asserts a state law defamation claim against all individually named Defendants. In Count Eight, Plaintiff asserts a state law false light claim against all individually named Defendants. In Count Nine, Plaintiff asserts a state law intentional infliction of emotional distress claim against all individually named Defendants. In Count Ten, Plaintiff asserts a state law negligent infliction of

---

[3] In his Opposition Brief, Plaintiff "concedes that Count 4, because it is pled against all defendants for injunctive relief based on state law, may not survive this motion pursuant to Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984)." (Pl.'s Opp. Br. at 21 n.*) Accordingly, Count Four of Plaintiff's Complaint is dismissed with prejudice in its entirety.

emotional distress claim against all individually named Defendants. Finally, in Count Eleven, Plaintiff asserts various state and federal law claims against John and Jane Does 1 to 25. On April 16, 2013, Defendants filed the instant Motion to Dismiss.

## II.   DISCUSSION

### A.  Legal Standards on Defendants' Motion to Dismiss

The adequacy of pleadings is governed by FED. R. CIV. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that FED. R. CIV. P. 8 "requires a 'showing,' rather than a blanket assertion of an entitlement to relief.") (internal citations omitted).

#### 1.   FED. R. CIV. P. 12(b)(1)

Pursuant to FED. R. CIV. P. 12(b)(1), the Court must dismiss a complaint, in whole or in part, if the plaintiff fails to establish that the Court has jurisdiction over the claim. The plaintiff, as the party asserting jurisdiction, "bears the burden of showing that the case is properly before the court at all stages of the litigation." *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir. 1993). Pursuant to 28 U.S.C. § 1331, federal district courts have jurisdiction over "all civil actions arising under the Constitution, law, or treaties of the United States."[4] "Federal question jurisdiction arises where federal law creates the cause of action, or where the complaint, on its face, poses a federal

---

[4] "An action arises under the laws of the United States if and only if the complaint seeks a remedy expressly granted by a federal law or if it requires the construction of a federal statute or a distinctive policy of a federal statute requires the application of federal legal principles for its disposition." *Jayme v. MCI Corp.,* 328 Fed. Appx. 768, 770 (3d Cir. 2008).

question." *Schneller ex rel. Schneller v. Crozer Chester Med. Ctr.,* 387 Fed. Appx. 289, 292 (3d Cir. 2010) (citing *Club Comanche, Inc. v. Gov't of V.I.,* 278 F.3d 250, 259 (3d Cir. 2002)).

## 2. FED. R. CIV. P. 12(b)(6)

FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint if the plaintiff "fail[s] to state a claim upon which relief can be granted[.]" When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 233 (citation and quotations omitted). In *Twombly*, the Supreme Court clarified the 12(b)(6) standard. The Court held that the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555. In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court has explained that principle. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Moreover, in deciding a motion to dismiss, a court may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a plaintiffs claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004).

## 3. FED. R. CIV. P. 12(e)

Pursuant to FED. R. CIV. P. 12(e), a "party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." While a plaintiff may comply with the standard set forth in FED. R. CIV. P. 8(a)(2), his complaint is not insulated from a motion for a more definite statement. *See Clark v. McDonald's Corp.*, 213 F.R.D. 198, 233 (D.N.J. 2003). In fact, the purpose of Rule 12(e) "is to require greater specificity than what is ordinarily required under Rule 8(a)(2) in that narrow class of cases where the want of specificity precludes the defendant from properly framing an answer to a legally sufficient complaint." *Id*. However, "to the extent Rule 12(e) can be implemented to require more than what is required by Rules 8(a)(2) and 12(b)(6), and may thereby be prone to abuse by defendants, 'its exercise should be cast in the mold of strictest necessity.'" *Id.* (citing *Lincoln Labs., Inc. v. Savage Labs., Inc.*, 26 F.R.D. 141, 142 (D. Del. 1960)).

## B. Plaintiff's 42 U.S.C. § 1983 Claims – Counts One, Two and Three

### 1. Count One: 42 U.S.C. § 1983 – Injunctive Relief Against All Defendants

In Count One, Plaintiff contends that he "has a property interest in continued employment with [D]CJ" and "was deprived of this property interest without due process of law." (Compl. at ¶ 41-42). Specifically, Plaintiff contends that "[p]rior to his termination, [he] was not afforded any hearing or any opportunity to present evidence and examine witnesses and proofs." (*Id*. at ¶ 43). Plaintiff further contends that he has been "stigmatized" by the Defendants' public disclosure of "false and defamatory impressions" about him, thus harming his "good name, reputation, honor and integrity" and "imperil[ing]" his future employment. (*Id*. at ¶¶ 45-47). He argues that he "was, and is, entitled to an opportunity to clear his name and be restored to his employment." (*Id.* at ¶ 46). According to the Plaintiff, Defendants' "actions were intentional, willful, malicious, and in reckless disregard of [his] rights secured by 42 U.S.C. § 1983 and the Fourteenth Amendment of the United

States Constitution." (*Id.* at ¶ 49). Accordingly, Plaintiff demands a "mandatory injunction against all [D]efendants returning him to employment at [D]CJ." (*Id.* at ¶ 50).

Defendants argue that Count One should be dismissed for four reasons. First, Defendants argue that Plaintiff's § 1983 claim "must fail, because Plaintiff was at at-will employee who had no contractual or statutory entitlement to continued employment or to a hearing prior to the termination of his employment." (Defs.' Br. at 5). Specifically, Defendants contend that Torrey, as an Investigator with the DCJ, was in the "unclassified service of civil service[]" within the meaning of N.J.S.A § 52:17B-100.1, and, therefore, "serve[d] at . . . [the] pleasure [of the Attorney General] and [was] subject to removal by him[.]" (*Id.*). Second, Defendants argue that the DCJ and its officials acting in their official capacities are not "persons" for purposes of suit under 42 U.S.C. § 1983. Third, Defendants argue that Plaintiff's justification for injunctive relief does not fall within a recognized exception to the states' Eleventh Amendment immunity. Fourth, Defendants argue that "even if Plaintiff could prove a violation of his federal or constitutional rights," Count One should still be dismissed because "none of the individuals named as defendants in this suit have the authority to reinstate Plaintiff in his prior position." (*Id.* at 10). According to the Defendants, only the Attorney General of the State of New Jersey has such authority. The Court will address these arguments in turn.

The Court will first consider Defendants' argument that Plaintiff's § 1983 claim in Count One should be dismissed because it is barred by the Eleventh Amendment[5] or because the DCJ and the individually named Defendants acting in their official capacities are not "persons" for purposes of suit under 42 U.S.C. § 1983. According to the Defendants, "[i]t is not disputed that the [DCJ] is an agency of the State of New Jersey, and that the Individual Defendants are named in their official

---

[5] The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI

capacities as employees of the DCJ, as well as their individual capacities." (Defs.' Br. at 8). As such, Defendants argue that suit against the "State, [the Department of Law and Public Safety], DCJ and all individually named Defendants under § 1983 is barred and all such claims in Count One should be dismissed for failure to state a claim upon which relief can be granted." (*Id.*).

As developed, the Eleventh Amendment affords states and state agencies immunity from suits brought by citizens in federal court. *MCI Telecom. Corp. v. Bell Atl.-Pa.*, 271 F.3d 491, 503-04 (3d Cir. 2001); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974). That immunity is not absolute, however, and three primary exceptions have been established that limit the breadth of the Eleventh Amendment: (1) congressional abrogation; (2) waiver by the state; and (3) suits against individual state officers for prospective injunctive relief and declaratory relief. *MCI*, 271 F.3d at 503. Here, because Congress' enactment of § 1983 did not abrogate states' immunity, *see Quern v. Jordan*, 440 U.S. 332, 340-41, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979), and New Jersey has neither consented to nor waived its immunity, the Eleventh Amendment bars Plaintiff's § 1983 claims against the State of New Jersey, the Department of Law and Public Safety and the DCJ in Count One of the Amended Complaint. Moreover, New Jersey and its state agencies are not considered "persons" for purposes of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989). Accordingly, Count One of Plaintiff's Amended Complaint is dismissed with prejudice insofar as it is asserted against the State of New Jersey, the Department of Law and Public Safety, and the DCJ.[6] *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (stating that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is

---

[6] The Court dismisses Count One, as asserted against the State of New Jersey, the Department of Law and Public Safety, and the DCJ, pursuant to FED. R. CIV. P. 12(b)(1). *See Grohs v. Yatauro*, 2013 U.S. Dist. LEXIS 165350, at *7 (D.N.J. Nov. 20, 2013) (stating that "immunity arguments . . . are more properly considered as challenges to the court's jurisdiction under Fed. R. Civ. P. 12(b)(1).").

proscribed by the Eleventh Amendment."); *see also Betts v. New Castle Youth Dev. Center*, 621 F.3d 249, 253-54 (3d Cir. 2010) (stating that "[s]tate governments and their subsidiary units are immune from suit in federal court").

As to Plaintiff's suit against the individually named Defendants, however, the third exception to Eleventh Amendment immunity is implicated. Although it is well-established that suits against state officers are generally barred by the Eleventh Amendment, *see Will*, 491 U.S. at 71, the doctrine established in *Ex Parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), permits certain types of actions against such officers to proceed. Specifically, *Ex Parte Young* allows for individual state officers to be sued in their official capacities for prospective injunctive relief and declaratory relief to end ongoing violations of federal law. *MCI*, 271 F.3d at 506. As the Supreme Court has recognized, "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985). The relief sought must be "prospective, declaratory, or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages." *MCI*, 271 F.3d at 506 (citing *Pennhurst*, 465 U.S. at 102-03). In determining whether *Ex Parte Young* avoids an Eleventh Amendment bar, a court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Pennsylvania Fed. of Sportsmen's Clubs v. Hess*, 297 F.3d 310, 323-24 (3d Cir. 2002) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)).

In Count One of his Amended Complaint, Plaintiff seeks a "mandatory injunction . . . returning him to employment at [D]CJ." (Compl. at ¶ 50). He asserts in his Opposition Brief that the

"alleged deprivation of his federally protected procedural due process rights" is "ongoing[.]" (Pl.'s Opp. Br. at 12). The Third Circuit has found that such a request for reinstatement of employment "is the type of injunctive, 'forward-looking' relief cognizable under *Ex Parte Young*." *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002) (finding that a plaintiff's request to have his employment reinstated by state officials was permissible relief under the Eleventh Amendment); *Melo v. Hafer*, 912 F.2d 628, 635-36 (3d Cir. 1990) (finding that a plaintiff's request for reinstatement was prospective relief and not barred by the Eleventh Amendment), *aff'd by* 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991). A state official against whom prospective injunctive relief is sought, then, does not partake of the State's sovereign immunity under the Eleventh Amendment, and is considered a "person" for purposes of § 1983. Accordingly, because Plaintiff's Count One § 1983 claim against the individual Defendants in their official capacities falls within an *Ex Parte Young* exception, the Court finds that it is not barred by the Eleventh Amendment.

While the Court finds that Plaintiff's § 1983 claim against the individually named Defendants acting in their official capacities in Count One of the Amended Complaint is not barred by the Eleventh Amendment, the Court must now consider whether Plaintiff has alleged sufficient facts to establish a Fourteenth Amendment due process violation under § 1983. 42 U.S.C. § 1983 "'imposes civil liability upon any person who, acting under color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233 n.8 (3d Cir. 2006) (quoting *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005)). To state a claim under § 1983 for a deprivation of procedural due process rights, a plaintiff must allege that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life,

liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"
*Hill*, 455 F.3d at 233-34 (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Here, Plaintiff
advances two procedural due process claims. He first raises a property-based procedural due process
claim, arguing that he was deprived of his right to continued employment without due process of law
when he was terminated from DCJ on March 30, 2012 without a "hearing or any opportunity to
present evidence[.]" (Compl. at ¶ 43). He then raises a so-called "stigma-plus claim," arguing that he
was deprived of a liberty interest in his reputation "[a]s a result of the public dissemination by the
[D]efendants . . . of false and defamatory impressions about [him]."[7] (Compl. at ¶ 47).

In order to have a property interest in a job, "a person must have more than a unilateral
expectation of continued employment; rather, [he] must have a legitimate entitlement to such
continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citing *Bd. of Regents
v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)). "Whether a person has a
legitimate entitlement to - - and hence a property interest in - - his government job is a question
answered by state law." *Hill*, 455 F.3d at 234; *see also Roth*, 408 U.S. at 577 (stating that "[p]roperty
interests . . . are created and their dimensions are defined by existing rules or understandings that
stem from an independent source such as state law[.]"). In New Jersey, "an employer may fire an
employee for good reason, bad reason or no reason at all under the employment-at-will doctrine[]
[and] [a]n employment relationship remains terminable at the will of either an employer or
employee, unless an agreement exists that provides otherwise." *Witkowski v. Thomas J. Lipton, Inc.*,
136 N.J. 385, 643 A.2d 546, 552 (N.J. 1994) (internal citation omitted). If parties to an employment
agreement intend for the relationship to be something other than at-will, such intention must be

---

[7] While Plaintiff's Amended Complaint does not explicitly allege a deprivation of a liberty interest, the Court
construes Plaintiff's repeated allegations of "stigmatizing" conduct and damage to his "good name, reputation,
honor and integrity" in Count One of his Amended Complaint as such. (Compl. at ¶¶ 45-46).

"specifically stated in explicit, contractual terms." *Anderson v. DSM N.V.*, 589 F. Supp. 2d 528, 534 (D.N.J. 2008) (internal quotation marks and citation omitted).

Here, pursuant to N.J.S.A. § 52:17B-100.1, Torrey was at at-will employee under New Jersey law.[8] As an at-will employee, Torrey "does not have a legitimate entitlement to continued employment because [he] serves solely at the pleasure of [his] employer." *Elmore*, 399 F.3d at 282 (citing *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988)). As this Court has recognized, "[e]mployees who hold their position at the will of a public employer are not entitled to assert due process claims against their employer for failure to provide adequate notice or hearing prior to an adverse employment action." *Rogosich v. Twp. of W. Milford Mun. Utils. Auth.*, 2013 U.S. Dist. LEXIS 112461, at *13 n. 5 (D.N.J. Aug. 9, 2013). "[O]nce a court determines that a public employee 'held [his] position at the will and pleasure of the [government entity],' such a finding 'necessarily establishes that [the employee] had no property interest' in the job sufficient to trigger due process concerns." *Elmore*, 399 F.3d at 282 (citing *Bishop v. Wood*, 426 U.S. 341, 346 n.8, 48 L. Ed. 2d 684, 96 S. Ct. 2074 (1976) (internal quotations omitted); *Battaglia v. Union Cnty. Welfare Bd.*, 88 N.J.48, 56, 438 A.2d 530 (N.J. 1981) (stating that "an employee hired at will or one whose term of office has expired has no entitlement to the position and may not prevail on a claim that loss of the employment constituted deprivation of property.") (citation omitted). Here, Plaintiff's Amended Complaint does not allege facts that would suggest that he was anything other than an at-will employee. For example, the Amended Complaint does not state that Torrey had a tenured position, nor does it cite specific DCJ policies or procedures that would lead one to infer that Torrey possessed a legitimate entitlement to his job – such as a "just cause" termination provision.

---

[8] N.J.S.A. § 52:17B-100.1 states: "There is hereby created in the Division of Criminal Justice, the office or position of State Investigator which shall be in the unclassified service of the civil service. The Attorney General may appoint such number of suitable persons to serve as State investigators, to serve at his pleasure and subject to removal by him, as are necessary to assist in the detection, apprehension, arrest and conviction of offenders against the law."

Furthermore, the Amended Complaint contains no facts which suggest that there was a "mutually explicit understanding" or implicit contract between Torrey and the DCJ regarding the nature or duration of his employment. *Perry v. Sindermann*, 408 U.S. 593, 602, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). The New Jersey statute limiting DCJ investigators to at-will employment and removal at the pleasure of the Attorney General precludes Plaintiff's claim of having a property interest in his prior employment. Accordingly, to the extent that Plaintiff's Count One § 1983 claim is based on the Defendants having deprived him of a cognizable property interest in his position at the DCJ, that claim is dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6).

In his second procedural due process claim, Torrey alleges that he suffered harm to his reputation and ability to find future employment as a result of the "false and defamatory impressions" created by the Defendants. Specifically, Plaintiff alleges that his "good name, reputation, honor and integrity have been harmed and jeopardized by the [D]efendants' conduct and he was . . . entitled to an opportunity to clear his name and be restored to his employment." (Compl. at ¶ 46).

In *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S. Ct. 507, 27 L. Ed. 2d 515 (1971), the Supreme Court held that an individual has a protectable interest in his reputation. The Third Circuit has subsequently clarified, however, that "reputation alone is not an interest protected by the Due Process Clause." *Versarge v. Twp. of Clinton*, 984 F.2d 1359, 1371 (3d Cir. 1993) (internal quotations and citation omitted). "Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236; *see also McCarthy v. Darman*, 372 Fed. Appx. 346, 351 (3d Cir. 2010). In other words, damage to reputation "is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right

16

or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul v. Davis*, 424 U.S. 693, 47 L. Ed. 2d 405, 96 S. Ct. 1155 (1976)).

In the public employment context, "the 'stigma-plus' test has been applied to mean that when an employer 'creates and disseminates a false and defamatory impression about the employee in connection with his termination,' it deprives the employee of a protected liberty interest." *Hill*, 455 F.3d at 236 (quoting *Codd v. Velger*, 429 U.S. 624, 628, 97 S. Ct. 882, 51 L. Ed. 2d 92 (1977)). "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Hill*, 455 F.3d at 236. When such a deprivation occurs, the employee is entitled to a name-clearing hearing. *Id*.

To satisfy the "stigma" prong of the test, a plaintiff must allege "that the purportedly stigmatizing statement[s] (1) were made publicly, . . . and (2) were false. *Id*. (internal citations omitted). Here, Plaintiff has alleged that "one or more" of the Defendants, specifically Defendant O'Grady, disseminated "false and defamatory impressions about [him] in connection with his employment with [D]CJ[.]" (Compl. at ¶ 47). He alleges that those impressions were publicly communicated to a representative of the Mercer County Sheriff's Office. (*Id*. at ¶ 34). He further alleges that the accusations were false, harmed his "good name, reputation, honor and integrity[,]" and "imperiled" his prospects of future employment. (*Id*. at ¶¶ 45-47). Accordingly, the Court finds that Plaintiff adequately alleges the "stigma" prong of the "stigma-plus" test.

To satisfy the "plus" prong of the "stigma-plus" test, the plaintiff must demonstrate an "alteration or extinguishment of 'a right or status previously recognized by state law.'" *Hill*, 455 F.3d at 237 (quoting *Paul v. Davis*, 424 U.S. at 711). With regard to what constitutes a sufficient "plus" under the "stigma-plus" test, the Third Circuit has explicitly held that "a public employee who is defamed in the course of being terminated . . . satisfies the 'stigma-plus' test even if, as a

matter of state law, he lacks a property interest in the job he lost." *Hill*, 455 F.3d at 238. Here, Plaintiff alleges that he was terminated and that defamatory statements were made "in connection with his employment with [D]CJ." (Compl. at ¶ 47). The Court finds that this is sufficient to satisfy the "plus" prong of the "stigma-plus" test, despite the fact that Torrey was an at-will employee and, as discussed above, did not have a property interest in continued employment under state law. *See Hill*, 455 F.3d at 239. As such, the Court finds that Torrey has adequately stated a claim for deprivation of his liberty interest in his reputation without due process of law.

While the Court finds that Plaintiff has stated a claim for deprivation of his liberty interest in his reputation without due process in Count One, the equitable relief sought by the Plaintiff pursuant to that claim – "a mandatory injunction against all [D]efendants returning him to employment at [D]CJ, with all associated back pay, seniority and benefits[]" – cannot be enjoined as a matter of law. As the Third Circuit has stated, a plaintiff who prevails on a "stigma-plus claim" is "entitled to a name-clearing hearing." *Hill*, 455 F.3d at  236. The Supreme Court has recognized that "the hearing required where a nontenured employee has been stigmatized in the course of a decision to terminate his employment is solely to provide the person an opportunity to clear his name." *Codd*, 429 U.S. at 627. Other courts have similarly recognized that the exclusive equitable remedy available to a Plaintiff who prevails on a "stigma-plus" claim is a name-clearing hearing to answer charges affecting his liberty interest in his reputation. *See Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1988) (stating that "the process due . . . an individual [whose reputation has been damaged] is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee.") (citing *Roth*, 408 U.S. at 573 n.12). Here, even if the Plaintiff could establish the requisite injury to his reputation, the only injunctive relief that this Court could enjoin is a "name-clearing" hearing. That is not the relief sought in Count One.

Accordingly, to the extent that Plaintiff seeks reinstatement to his former position as equitable relief for Defendants' alleged deprivation of Plaintiff's liberty interest in his reputation, Plaintiff fails to state a cognizable claim upon which the requested relief can be granted. As such, that claim is dismissed without prejudice.

Based on the foregoing analysis, the Court dismisses with prejudice Count One as to Defendants the State of New Jersey, the Department of Law and Public Safety, and the DCJ pursuant to FED. R. CIV. P. 12(b)(1).[9] The Court dismisses with prejudice Count One as to Defendants Taylor, Morris, Beet, Ferris, O'Grady, and John and Jane Does 1 to 25 insofar as that claim is based on an alleged deprivation of Plaintiff's property interest in his employment at the DCJ pursuant to FED. R. CIV. P. 12(b)(6). The Court dismisses without prejudice Count One as to the individually named Defendants insofar as that claim is based on an alleged deprivation of Plaintiff's liberty interest in his reputation pursuant to FED. R. CIV. P. 12(b)(6). Plaintiff may file an Amended Complaint that cures the pleading deficiencies of that claim – namely, requesting a "name-clearing" hearing as injunctive relief as opposed to reinstatement.

### 2.   Count Two: 42 U.S.C. § 1983 – Damages Against Individual Defendants

In Count Two, Plaintiff alleges violations of 42 U.S.C. § 1983 by Defendants Taylor, Morris, Beet, Ferris, O'Grady and John and Jane Does 1 to 25 in their individual capacities and seeks "damages and other remedies, including counsel fees," from these Defendants. The § 1983 claims asserted in Count Two repeat the allegations asserted in Count One, namely: (1) that Plaintiff has a property interest in continued employment with the DCJ and was deprived of this property interest without due process of law and (2) that Plaintiff has a liberty interest in his reputation and was deprived of this liberty interest without due process of law. Defendants argue that Count Two of the

---

[9] Because DCJ is named only in Count One and Count Four of the Amended Complaint, and the Court is granting Defendants' Motion to Dismiss on both counts, the Amended Complaint is dismissed as to this Defendant in its entirety with prejudice.

Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff, as an at-will employee, had no cognizable property interest in his position at DCJ. (*See* Defs.'s Br. at 7). Defendants further contend that Count Two should be dismissed because "[t]he State of New Jersey has never waived its sovereign immunity in the federal courts." (*Id.* at 20-21).

While a plaintiff's claim for damages against a state official acting in his official capacity is barred by Eleventh Amendment sovereign immunity, *Will*, 491 U.S. at 71, a claim for damages against a state official acting in his individual capacity is a different matter. In that individual capacity, a state official does not partake of the state's Eleventh Amendment sovereign immunity and is a suable "person" within the meaning of § 1983. *Hafer v. Melo*, 502 U.S. 21, 30-31, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991); *Smith v. New Jersey*, 908 F. Supp. 2d 560, 563 (D.N.J. 2012). The Supreme Court has clearly stated that since its decision in *Ex Parte Young*, "it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he deprived another of a federal right under the color of state law." *Scheuer v. Rhodes*, 416 U.S. 232, 237, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974). Moreover, "[w]hile the doctrine of *Ex parte Young* does not apply where a plaintiff seeks damages from the public treasury, damages awards against individual defendants in federal courts 'are a permissible remedy in some circumstances notwithstanding the fact that they hold public office.'" *Hafer*, 502 U.S. at 30 (quoting *Scheuer*, 416 U.S. at 238). "That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Id.* Accordingly, Torrey's § 1983 claims for damages against the Defendants in their individual capacities are not barred by the Eleventh Amendment.

While Plaintiff's claims for damages against the Defendants in their individual capacities are not barred by the Eleventh Amendment, Plaintiff is still required to allege sufficient facts to establish

a Fourteenth Amendment due process violation under § 1983 in order to survive Defendants' Motion to Dismiss. As discussed above, Plaintiff's former status as an at-will employee precludes him from asserting a protected property interest in his prior employment. Accordingly, to the extent that Plaintiff's Count Two § 1983 claim is based on the Defendants having deprived him of a cognizable property interest in his position at DCJ, that claim is dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6). The Court finds, however, that Plaintiff has adequately stated a "stigma-plus" claim for deprivation of his liberty interest in his reputation without due process of law. As such, if Torrey prevails on his § 1983 liberty interest claim, he may be entitled to, at the very least, nominal damages or other additional damages depending on the nature of the deprivation, the extent of his lost opportunities, and the degree to which it has affected his ability to secure future employment. Plaintiff's Count Two § 1983 claim can, therefore, proceed against the individually named Defendants insofar as it is based on an alleged deprivation of his liberty interest in his reputation.

### 3.  Count Three: 42 U.S.C. § 1983 – Damages for Conspiracy Against Individual Defendants

In Count Three, Plaintiff alleges that the individually named Defendants "conspired to deprive him of due process under the law" in violation of 42 U.S.C. § 1983. (Compl. at ¶ 54). "To make out a conspiracy claim under § 1983, [Plaintiff] must show that 'persons acting under color of state law conspired to deprive him of a federally protected right.'" *Perano v. Twp. of Tilden*, 423 Fed. Appx. 234, 239 (3d Cir. 2011) (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999)). As a threshold matter, however, a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right. *See Andree v. Ashland Cnty.*, 818 F.3d 1306, 1311 (7th Cir. 1987); *see also Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) (recognizing that deprivation of a right was a necessary predicate to § 1983 conspiracy liability). As discussed above, Plaintiff's Amended Complaint does not allege facts that would suggest that he was

anything other than an at-will employee. The statute governing Plaintiff's former position did not provide him with procedural due process rights, but instead granted the Attorney General the right to terminate Plaintiff's employment without cause or a hearing. As such, Plaintiff did not have a legitimate property interest in his former employment. Accordingly, to the extent that Plaintiff's Count Three § 1983 claim is based on the Defendants having conspired to deprive him of a cognizable property interest in his position at the DCJ, that claim is dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6).

While Plaintiff has adequately stated a claim for deprivation of his liberty interest in his reputation without due process of law, the Court finds that he has not stated a viable § 1983 conspiracy claim against any of the Defendants based on that claim. To constitute a civil conspiracy under § 1983, "there must be a 'meeting of the minds.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)). Thus, in order to survive a Rule 12(b)(6) motion, Plaintiff's "allegations of a conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. The Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009). In this regard, a plaintiff must allege that "two or more co-conspirators reached an agreement for the purpose of depriving him of his constitutional rights under color of state law." *Prince v. Aiellos*, 2010 U.S. Dist. LEXIS 108916, at *28 (D.N.J. 2010) (citations omitted). "It is not enough to allege that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism." *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa.1997). Rather, Plaintiff must plead sufficient facts to show that the alleged conspirators "directed themselves toward an unconstitutional action by virtue of a mutual

understanding or agreement." *Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa.1982).

Count Three of the Amended Complaint alleges only that "[t]wo or more of the individual defendants, in their individual capacities, conspired to deprive Torrey of due process under the law, and, in doing so, did damage him." (Compl. at § 54). The allegations in Plaintiff's Amended Complaint do not provide a sufficient factual basis to support the existence of the elements of a conspiracy, namely, an agreement and some concerted action. Plaintiff has not pled any facts that plausibly suggest a meeting of the minds between the individually named Defendants. *See Twombly*, 550 U.S. at 556 ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement."). Moreover, Plaintiff has failed to allege the approximate time when the agreement was made or the period of the conspiracy. *See Shearin v. E.F. Hutton Group, Inc.*, 885 F.2d 1162, 1166 (3d Cir.1989) ("To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose."), *abrogated on other grounds by Beck v. Prupis*, 529 U.S. 494, 120 S. Ct. 1608, 146 L. Ed. 2d 561 (2000). More specifically, Plaintiff fails to allege, with any factual support, that each of the individually named Defendants reached an agreement to carry out such actions with the mutual objective of depriving him of his liberty interest in his reputation. Plaintiff relies on nothing more than speculation that an agreement existed among the Defendants to violate his constitutional rights. Simply put, the Amended Complaint lacks sufficient factual allegations to create "plausible grounds to infer an agreement," as is required by *Twombly*, 550 U.S. at 556. Accordingly, to the extent that Plaintiff's Count Three § 1983 claim is based on the Defendants having conspired to deprive him of

a cognizable liberty interest in his reputation, that claim is dismissed without prejudice pursuant to FED. R. CIV. P. 12(b)(6).

### C.  Plaintiff's Common Law Due Process Claim – Count Five

In Count Five, Plaintiff asserts "New Jersey [c]ommon [l]aw [d]ue [p]rocess [c]laims" against Defendants Taylor, Morris, Beet, Ferris, O'Grady and John and Jane Does 1 to 25 in their individual capacities and seeks "damages and other remedies, including counsel fees," from these Defendants. (Compl. at ¶¶ 60-61.  Specifically, Plaintiff alleges that "[b]y failing to provide [him] a hearing, with an opportunity to present evidence and question and cross-examine witnesses, the [D]efendants deprived [him] of his common law due process rights." (*Id*. at ¶ 56).

Defendants argue that Plaintiff's New Jersey common law due process claims are barred by the Eleventh Amendment. (*See* Defs. Br. at 19) ("Pursuant to the Eleventh Amendment to the United States Constitution, this Court lacks the subject matter jurisdiction to hear these claims against the Defendants."). Defendants further argue that even if this Court could exercise jurisdiction over Plaintiff's Count Five claim, Plaintiff has "failed to establish a legally recognizable claim for relief, as he has not established that he is entitled to any 'due process' or injunctive relief under New Jersey law relative to his termination." (*Id*. at 22). In opposition, Plaintiff argues that "[t]he Eleventh Amendment does not bar suits against state officials in their individual capacities when the claims against them are based on state law." (Pl.'s Opp. Br. at 21).

In *Pennhurst*, the Supreme Court held that "a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment." 465 U.S. at 121. The Court further held "that this principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Id*. The jurisdictional limitation recognized in *Pennhurst*, however, does not apply to an individual capacity claim seeking damages

against a state official, even if the claim is based on state law. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *Wilson v. UT Health Ctr.*, 973 F.2d 1263, 1271 (5th Cir. 1992) ("*Pennhurst* and the Eleventh Amendment do not deprive federal courts of jurisdiction over state law claims against state officials strictly in their individual capacities."). Here, Plaintiff is suing the Defendants in their individual capacities, and seeks damages for their alleged violations of his state law due process rights. As such, the Eleventh Amendment does not preclude this Court from exercising jurisdiction over Torrey's state law due process claims against the individually named Defendants.

While Plaintiff's state law due process claim in Count Five of the Amended Complaint is not barred by the Eleventh Amendment, the Court must now consider whether Plaintiff has alleged sufficient facts to establish a due process violation under New Jersey law. N.J. CONST. art. I, § 1 provides: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." The New Jersey Constitution "does not enumerate the right to due process, but protects against injustice and, to that extent, protects 'values like those encompassed by the principle[] of due process." *Doe v. Poritz*, 142 N.J. 1, 99, 662 A.2d 367 (N.J. 1995) (quoting *Greenberg v. Kimmelman*, 99 N.J. 552, 568, 494 A.2d 294 (N.J. 1985)). In examining a procedural due process claim under New Jersey law, courts must "first assess whether a liberty or property interest has been interfered with by the State, and second, whether the procedures attendant upon that deprivation are constitutionally sufficient." *Doe*, 142 N.J. at 99. (citations omitted).

As discussed above, Plaintiff did not have a legitimate property interest in his former employment due to his status as an at-will employee of the DCJ. As such, Plaintiff was not entitled

to any due process under New Jersey law relative to his termination. *See Nicoletta v. North Jersey Dist. Water Supply Comm'n*, 77 N.J. 145, 150, 390 A.2d 90 (N.J. 1978) (explaining that under common law an at-will employee who is "unprotected by any statutory tenure, contractual commitment or collective negotiation agreement[]" is subject to termination "with or without cause" by a public employer."). Accordingly, to the extent that Count Five seeks damages against the individually named Defendants based on an alleged deprivation of Plaintiff's property interest in his position at the DCJ, that claim is dismissed with prejudice pursuant to FED. R. CIV. P. 12(b)(6).

The Court now considers whether Plaintiff has adequately stated a claim for deprivation of a liberty interest in his reputation under New Jersey state law. While the New Jersey Constitution "does not explicitly enumerate the right to possession or protecting reputation[,] [t]hat right . . . was understood to be guaranteed by Article I, paragraph 1 of the Constitution of 1844." *Doe*, 142 N.J. at 104. The New Jersey Supreme Court, has concluded, therefore, that "[w]here a persons's [*sic*] good name or reputation are at stake because of what the government is doing to that person . . . sufficient constitutional interests are at stake." *Id*. at 105. In *Doe*, the New Jersey Supreme Court explained how its reputational liberty interest analysis differs from that under the Federal Constitution. The Court stated: "Our analysis differs from that under the Federal Constitution only to the extent that we find a protectible [*sic*] interest in reputation without requiring any other tangible loss." *Id*. at 104. In essence, the Court "found 'protectible [*sic*] interests in both privacy and reputation' that were more expansive than federal precedent by concluding that injury to reputation alone sufficed, i.e., that the stigma-plus test did not apply." *Filgueiras v. Newark Pub. Schs.*, 426 N.J. Super. 449, 473 45 A.3d 986 (App. Div. 2012). The Court noted, however, that it has "'generally been more willing to find State-created interests that invoke the protection of procedural due process than have [the Court's] federal counterparts.'" *Doe*, 142 N.J. at 104 (citing *New Jersey Parole Bd. v. Byrne,* 93 N.J. 192,

208, 460 A.2d 103 (N.J. 1983)). The Court defined the scope of those protections as such:

"Fundamentally, due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. The minimum requirements of due process, therefore, are notice and the opportunity to be heard." *Doe*, 142 N.J. at 106. Here, for the same reasons discussed in the Court's analysis of Plaintiff's § 1983 liberty interest claim, the Court finds that Plaintiff has adequately stated a claim for deprivation of his liberty interest in his reputation under New Jersey state law. If Plaintiff prevails on his state law liberty interest claim, he may be entitled to damages from the individually named Defendants depending on the nature of the deprivation, the extent of his lost opportunities, and the degree to which it has affected his ability to secure future employment. Plaintiff's Count Five claim can, therefore, proceed against those Defendants insofar as it is based on an alleged deprivation of his liberty interest in his reputation.

### D.  Plaintiff's State Law Tort Claims – Counts Six, Seven, Eight, Nine and Ten

In Counts Six through Ten of the Amended Complaint, Plaintiff asserts various state law tort claims against all Defendants, except the DCJ, in their individual capacities. Specifically, Plaintiff asserts claims for tortious interference with economic advantage (Count Six), defamation (Count Seven), false light (Count Eight), intentional infliction of emotion distress (Count Nine), and negligent infliction of emotional distress (Count Ten). As an initial matter, Defendants seek dismissal of Plaintiff's state law claims on the grounds that Plaintiff has failed to comply with the notice requirements of the New Jersey Tort Claims Act, N.J.S.A. 59:1, *et seq*. ("NJTCA" or the "Act"). The Court will address this argument before turning to the individual state law tort claims.

The NJTCA sets forth certain procedural requirements that a plaintiff must satisfy prior to filing suit against a public entity or public employee for damages. N.J.S.A. 59:8-3. Notice is one such requirement whereby a plaintiff must serve a notice of claim with a public entity within ninety

days from when the cause of action accrues. N.J.S.A. 59:8-8. Failure to serve a notice of claim forever bars a claimant from recovering against that public entity or public employee. *Id.*; *see also Karczewski v. Nowicki*, 188 N.J. Super. 355, 357, 457 A.2d 837 (App. Div. 1982); *Saldana v. City of Camden*, 252 N.J. Super. 188, 198, 599 A.2d 582 (App. Div. 1991).

Here, the Defendants seek dismissal of Plaintiff's state law claims on the grounds that Plaintiff has failed to comply with the notice requirements of N.J.S.A. 59:8-8(a). Specifically, Defendants argue that no notice of tort claim was ever filed. (Defs.' Br. at 12). In the alternative, Defendants argue that Plaintiff must be compelled to plead with specificity when he made efforts to obtain employment and when he was informed that negative comments had been made by persons at the DCJ, so that the Defendants can properly "ascertain exactly when a notice of tort claim was required to have been filed." (*Id.*).The Plaintiff argues in opposition that he has fully complied with the notice requirements of N.J.S.A. 59:8-8. In support of his argument, Plaintiff submits the certification of his counsel, Barry H. Evenchick, who states that he submitted a notice of claim on behalf of the Plaintiff to the State of New Jersey on June 26, 2012. (Certification of Barry H. Evenchick ("Evenchick Cert.") at ¶ 2). In the notice of claim, which is attached as an exhibit to Mr. Evenchick's certification, Plaintiff indicates that his claim began to accrue on March 30, 2012, the date of his termination from DCJ. (*See* Evenchick Cert. at ¶ 2, Ex. 1). The notice of claim also describes the reasons for Plaintiff's claims as such:

> Claimant John Torrey was terminated as a [L]ieutenant within the New Jersey Division of Criminal Justice effective March 30, 2012. It is contended that the procedure which resulted in his termination was, *inter alia*, negligently and carelessly carried out, resulting in loss of employment and accompanying damage to his name, reputation and impairment of ability to become reemployed. It is also contended that the claimant had an implied contract of employment which was breached by the procedures and conduct of the Division of Criminal Justice in this matter, including the failure to afford claimant fundamental fairness and basic due process. *Id.*

Based on the foregoing, the Court finds that Plaintiff's June 26, 2012 filing satisfied the notice requirements of N.J.S.A. 59:8-8(a). The Plaintiff was terminated from his employment at DCJ on March 30, 2012. While Plaintiff's state law claims are mostly based on alleged actions taken by the Defendants shortly after Plaintiff had been terminated and was seeking new employment, the Court finds that those claims are sufficiently related to and encompassed within the description provided in Plaintiff's notice of claim. The March 30, 2012 date of Plaintiff's termination, therefore, is the earliest possible date of accrual of Plaintiff's cause of action. As such, pursuant to N.J.S.A. 59:8-8(a), Plaintiff was obligated to file his notice of claim within ninety days of that date. Plaintiff fulfilled that obligation by filing a timely notice of claim on June 26, 2012.

In addition, the Court finds that Plaintiff's notice of claim satisfied the pleading requirements imposed by N.J.S.A. 59:8-4. That statute requires that a notice of claim include:

    a.  The name and post office address of the claimant;

    b.  The post-office address to which the person presenting the claim desires notices to be sent;

    c.  The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

    d.  A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

    e.  The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and

    f.  The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. N.J.S.A. 59:8-4.

While Defendants seeks to impose a specificity requirement upon Plaintiff's filing of a notice of claim, N.J.S.A. 59:8-4 does not, by its terms, impose such a heightened standard. Here, Plaintiff's notice of claim notified the Defendants of the "date . . . and other circumstances . . . which gave rise

to the claim[s] asserted[,]" provided a "general description of the injur[ies]" allegedly sustained by the Plaintiff, and listed the "name . . . of the public entity . . . causing [those] injur[ies.]" *Id*. As such, Plaintiff's notice of claim complied with the notice requirements of the NJTCA. *See Guerrero v. City of Newark*, 216 N.J. Super. 66, 522 A.2d 1036 (App. Div. 1987). Accordingly, the Court finds that Plaintiff's state law claims are not barred by the NJTCA's notice of claim provisions.

While Plaintiff's state law tort claims against the individually named Defendants are not barred under N.J.S.A. 59:8-8, the Court must next consider Defendants' argument that the NJTCA provides them with immunity from these claims. The NJTCA provides immunity for public officials in certain circumstances. Specifically, the NJTCA immunizes a public employee from "injury resulting from the exercise of judgment or discretion vested in him." N.J.S.A. 59:3-2. A public employee also "is not liable if he acts in good faith in the execution or enforcement of any law." N.J.S.A. 59:3-3. Therefore, a public official's good faith exercise of judgment and discretion in the performance of his duties is afforded immunity. *See Burke v. Deiner*, 97 N.J. 465, 472-73, 479 A.2d 393 (N.J. 1984). This grant of immunity, however, is subject to a general exception that withholds immunity when the public employee's conduct "was outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J.S.A. 59:3-14. Here, each of Plaintiff's state law claims, except that for negligent infliction of emotional distress, alleges that Defendants engaged in malicious or willful conduct toward the Plaintiff. Accepting these factual allegations as true and construing the Amended Complaint in the light most favorable to the Plaintiff, the Court will not dismiss Plaintiff's state law claims based on Defendants' NJTCA immunity defense at this stage of the litigation as the alleged conduct falls within the exception provided in N.J.S.A. 59:3-14.

Having determined that Plaintiff's state law tort claims against the individually named Defendants are not barred by the notice or immunity provisions of the NJTCA, the Court now considers Defendants' argument that these claims should dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failing to "state a claim to relief that is plausible on its face[,]" or "raise a right to relief beyond the speculative level." *Twombly*, 550 U.S. at 555, 570. The Court first considers whether any of these claims can be dismissed as to any of the individual Defendants.

Each of Plaintiff's individual state law causes of action is essentially premised on the same set of factual allegations. Namely, Plaintiff alleges that following his termination from the DCJ, during the time when he was seeking employment with the Mercer County Sheriff's Office, an unnamed representative of that Office informed him that one or more employees of the DCJ had made negative and defamatory comments about him. (Compl. at ¶¶ 31-32). According to the Plaintiff, these comments included allegations of sexual harassment, misappropriation and theft of investigative funds and use of state-issued equipment to schedule contacts with escorts or prostitutes. (*Id*. at ¶ 34). Plaintiff contends that, as a result of these comments, he was not hired by the Mercer County Sheriff's Office and has been continually unsuccessful in obtaining alternative employment. (*Id*. at ¶¶ 36-37). The only individual Defendant named within the relevant set of facts is O'Grady, who, upon Plaintiff's information and belief, was "included" amongst those who allegedly communicated the negative comments to the Mercer County Sheriff's Office representative. (*Id*. at ¶ 32).

While this Court will accept Plaintiff's well-pleaded allegations as true for purposes of Defendants' Motion to Dismiss for failure to state a claim, the Court will not accept bald assertions, unsupported conclusions, unwarranted references, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 556 U.S. at 678-79. On the contrary, the Plaintiff is obligated to set

forth "factual content that allows the court to draw the reasonable inference that the [D]efendant[s] [are] liable for the misconduct alleged." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (citation omitted). While detailed factual allegations are not necessary to survive a Rule 12(b)(6) motion, Plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels[,] . . . conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the Plaintiff must provide enough factual allegations "to raise a right to relief above the speculative level." *Id*. Here, the Court finds that the Amended Complaint fails to set forth any factual allegations to show that Defendants Taylor, Morris, Beet, or Ferris made any of the defamatory statements which form the basis of Plaintiff's state law tort claims in Counts Six through Ten. Plaintiff alleges only that he was required to meet with Defendant Morris on January 24, 2011 to discuss "unspecified allegations" and that Defendants Beet and Ferris interviewed him on October 26, 2011 as part of an internal DCJ investigation. The Amended Complaint contains no factual allegations concerning Defendant Taylor other than stating that he was the Director of the DCJ at all relevant times. Notably, the Amended Complaint identifies only "O'Grady and/or persons presently among those denominated as defendants John and Jane Does" as having "created and disseminated false and defamatory information about Torrey regarding his employment with [D]CJ." (Compl. at ¶ 34). The Amended Complaint asserts in a purely conclusory manner that Defendants Taylor, Morris, Beet, and Ferris defamed Torrey to the Mercer County Sheriff's Office and Plaintiff relies on nothing more than speculation that an agreement existed among these Defendants to jeopardize his future employment opportunities. As such, the Amended Complaint has not set forth "enough facts to state a claim to relief that is plausible on its face." *See Twombly*, 550 U.S. at 570. The Court will therefore dismiss without prejudice Counts Six through Ten insofar as those counts are pled against Defendants Taylor, Morris, Beet and Ferris. In addition,

32

the Court will dismiss without prejudice these Counts as pled against Defendants John and Jane

Does 1 to 25 since, at this stage of the litigation, Plaintiff's claims do not raise a "right to relief

above the speculative level[.]" *Twombly*, 550 U.S. at 555. Should Plaintiff wish to proceed with

these claims against these Defendants, Plaintiff's Amended Complaint shall clearly identify which

claims are being asserted against which Defendants and set forth specific factual allegations that

support a plausible entitlement to relief as to each asserted claim.

        The Court will now consider Plaintiff's claims against Defendant O'Grady within the context

of each particular cause of action.

### 1.   Count Six: Tortious Interference with Prospective Economic Advantage

        In Count Six of the Amended Complaint, Plaintiff asserts a tortious interference with

prospective economic advantage claim against Defendants Taylor, Morris, Beet, Ferris, O'Grady and

John and Jane Does 1 to 25. Specifically, Plaintiff alleges that "the [D]efendants, or one or more of

them, alone and/or in concert, wrongfully, intentionally and with malice, interfered with [his]

economic advantage and other legitimate rights by defaming him to and with the Mercer County

Sheriff's Office." (Compl. at ¶ 64). Defendants seek to dismiss Plaintiff's tortious interference claim

for failure to state a claim. As previously discussed, the Court will dismiss Count Six without

prejudice insofar as this count is pled against Defendants Taylor, Morris, Beet, Ferris and John and

Jane Does 1 to 25. The Court's analysis of this claim is, therefore, limited to Defendant O'Grady.

        To state a claim for tortious interference with prospective economic advantage, a plaintiff

must allege "(1) a reasonable expectation of economic advantage from a prospective contractual or

economic relationship; (2) the defendant intentionally and maliciously interfered with the

relationship; (3) the interference caused the loss of the expected advantage; and (4) actual damages

resulted. *Am. Leistritz Extruder Corp. v. Polymer Concentrates, Inc.*, 363 Fed. Appx. 963, 967 (3d

Cir. 2010); *accord Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 563 A.2d 31, 37 (N.J. 1989). The phrase "prospective economic relationship" has been "construed liberally to include an employee's future employment opportunities." *Grossman v. Daily Racing Form*, 1994 U.S. Dist. LEXIS 8123, at *34 (D.N.J. June 10, 1994). However, allegations regarding some "vague, general future employment opportunity" are insufficient. *Id*. Rather, a plaintiff "must allege some potential employment opportunity with which the defendant interfered." *Saget v. Wells Fargo, N.A.*, 2013 U.S. Dist. LEXIS 167909, at *6 (D.N.J. Nov. 26, 2013). In addition, for purposes of this tort, "malice is defined to mean the harm was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown*, 116 N.J. at 751 (citing *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 19 N.J. 552, 563, 117 A.2d 889 (N.J. 1955)).

Here, Plaintiff contends that he "had a reasonable expectation that he was going to be hired by the Mercer County Sheriff's Office . . . [and] [i]n fact, . . . was informed he was going to be hired." (Compl. at ¶ 63). The Plaintiff does not simply allege a "vague, general future employment opportunity[,]" *Grossman*, 1994 U.S. Dist. LEXIS 8123, at *34, but rather, a specific employment opportunity with the Mercer County Sheriff's Office which he had a reasonable expectation of obtaining. He further alleges that Defendants "O'Grady and/or persons presently among those denominated as [D]efendants John and Jane Does[]" disseminated false and defamatory information about him to a representative of the Mercer County Sheriff's Office and that, in doing so, these Defendants acted "wrongfully, intentionally and with malice[.]" (Compl. at ¶¶ 34, 64). Moreover, Plaintiff alleges that "based on the statements made by [these Defendants] . . . [he] was not hired by the Mercer County Sheriff's Office[]" and that the Defendants' actions "proximately caused damage to [him]." (*Id*. at ¶¶36, 65). Accepting these factual allegations as true and construing the Amended Complaint in the light most favorable to the Plaintiff, the Court finds that Plaintiff has adequately

34

stated a claim of tortious interference with prospective economic advantage against Defendant O'Grady. Accordingly, Defendants' Motion to Dismiss Count Six of the Amended Complaint is denied insofar as that count is asserted against Defendant O'Grady.

### 2. Count Seven: Defamation

In Count Seven of the Amended Complaint, Plaintiff asserts a defamation claim against Defendants Taylor, Morris, Beet, Ferris, O'Grady and John and Jane Does 1 to 25. Specifically, he states that the oral statements communicated by one or more of the Defendants to a representative of the Mercer County Sheriff's Office were "defamatory, false in fact, intentionally misleading and maliciously, willfully and wantonly published, disseminated, and communicated with knowledge that they were false and/or with reckless disregard as to whether they were true or false and with the express purpose of placing [him] in a false and defamatory light." (Compl. at ¶ 67). Defendants seek to dismiss Plaintiff's defamation claim for failure to state a claim. As previously discussed, the Court will dismiss Count Seven without prejudice insofar as this count is pled against Defendants Taylor, Morris, Beet, Ferris and John and Jane Does 1 to 25.

To state a claim for defamation under New Jersey law, a plaintiff must show "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged communication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *Foy v. Wakefern Food Corp.*, 2010 U.S. Dist. LEXIS 1537, *15 (D.N.J Jan. 7, 2010) (citing *DeAngelis v. Hill*, 180 N.J. 1, 12-13, 847 A.2d 1261 (N.J. 2004). A defamatory statement is "one that is false and injurious to the reputation of another or exposes another person to hatred, contempt or ridicule or subjects another person to a loss of the good will and confidence of others." *Taj Mahal Travel v. Delta Airlines*, 164 F.3d 186, 189 (3d Cir. 1998) (citing *Romaine v. Kallinger*, 109 N.J. 282, 537 A.2d 284, 287 (N.J. 1988)) (internal quotations omitted). Under New Jersey law, a

plaintiff must sufficiently identify the party making the defamatory statements and the circumstances in which these statements were publicized. *See Zoneraich v. Overlook Hosp.*, 212 N.J. Super. 83, 101, 514 A.2d 53 (App. Div. 1986). Vague allegations of defamation are not enough. *Miele v. Rosenblum*, 254 N.J. Super. 8, 13, 603 A.2d 43 (App. Div. 1991). Rather, a plaintiff "must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication." *Zoneraich*, 212 N.J. Super. at 101.

Here, Plaintiff specifically identifies Defendants "O'Grady and/or persons presently among those denominated as [D]efendants John and Jane Does[]" as those who disseminated false and defamatory information about him. (Compl. at ¶ 34). He identifies the allegedly defamatory statements as having involved "issues . . . that were 'borderline criminal,' including sexual harassment, misappropriation and theft of investigative funds and use of state equipment to schedule contacts with one or more escorts or prostitutes[.]" (*Id.* at ¶ 34). He further alleges that these statements were "maliciously, willfully, and wantonly" communicated to a representative of the Mercer County Sheriff's Office, were false, and exposed him to humiliation and embarrassment (Compl. at ¶¶ 34, 67-68). As such, the Court finds that Plaintiff's defamation claim is pled with sufficient particularity to state a cause of action against Defendant O'Grady. Accordingly, Defendants' Motion to Dismiss Count Seven of the Amended Complaint is denied insofar as that count is asserted against Defendant O'Grady.

### 3.   Count Eight: False Light

In Count Eight of the Amended Complaint, Plaintiff asserts a false light claim against Defendants Taylor, Morris, Beet, Ferris, O'Grady and John and Jane Does 1 to 25. Specifically, Plaintiff alleges that the "statements made by one or more of the [D]efendants . . . publicized allegations concerning [him] that were not only false but were never intended to be publicized." (*Id.*

at ¶ 71). According to the Defendant, these statements "placed [him] in a false light and were highly offensive and embarrassing and would be to any reasonable person." (*Id*. at ¶ 72). Defendants seek to dismiss Plaintiff's false light claim for failure to state a claim. As previously discussed, the Court will dismiss Count Eight without prejudice insofar as this count is pled against Defendants Taylor, Morris, Beet, Ferris, and John and Jane Does 1 to 25.

In New Jersey, a defendant is subject to liability for false light invasion of privacy if: (1) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (2) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed. *Cibenko v. Worth Publishers, Inc.*, 510 F. Supp. 761, 766 (D.N.J. 1981). Claims for defamation and false light invasion of privacy "are closely allied, and the same considerations apply to each." *Id*. Knowledge or reckless disregard of the falsity of the statements at issue is an essential element of a false light claim under New Jersey law. *Botts v. N.Y. Times Co.*, 2003 U.S. Dist. Lexis 23785, at *5-6 (D.N.J. Aug. 29, 2003), *aff'd by* 106 Fed. Appx. 109 (3d Cir. 2004); *DeAngelis*, 180 N.J. at 19-20 ("In order to succeed on a false light claim, plaintiff must demonstrate that . . . the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter").

For the same reasons as discussed in the Court's defamation claim analysis, the Court finds that Plaintiff's false light claim is pled with sufficient particularity to state a valid cause of action against Defendant O'Grady. Plaintiff specifically alleges that O'Grady made the statements at issue "with malice" and the Court considers the substance of the alleged statements to be highly offensive to a reasonable person. Accordingly, Defendants' Motion to Dismiss Count Eight of the Amended Complaint is denied insofar as that count is asserted against Defendant O'Grady.

### 4.  Count Nine: Intentional Infliction of Emotional Distress

In Count Nine of the Amended Complaint, Plaintiff asserts an intentional infliction of emotional distress claim against Defendants Taylor, Morris, Beet, Ferris, O'Grady and John and Jane Does 1 to 25. Specifically, Plaintiff asserts that the "egregious conduct and misconduct of the [D]efendants, or one or more of them, exceeded all bounds of decency tolerated by our society, and, as a result, intentionally inflicted emotional distress upon [him]." (Compl. at ¶ 76). Plaintiff further alleges that the Defendants, "alone and/or in concert, acted willfully, maliciously and in wanton and reckless disregard of [his] rights and well-being[.]" (*Id*. at ¶ 79). Defendants argue that Plaintiff "has not alleged any facts whatsoever to support such a claim[.]" (Defs.' Br. at 17). As previously discussed, the Court will dismiss Count Nine without prejudice insofar as this count is pled against Defendants Taylor, Morris, Beet, Ferris and John and Jane Does 1 to 25.

To establish a claim for intentional infliction of emotional distress, a plaintiff must establish that: "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was outrageous; (3) the defendant's actions proximately caused plaintiff's emotional distress; and (4) plaintiff's emotional distress was 'so severe that no reasonable man could be expected to endure it.'" *Swingle v. Novo Nordisk, Inc.*, 2009 U.S. Dist. LEXIS 76991, at *23-24 (D.N.J. Aug. 27, 2009) (quoting *Buckley v. Trenton Sav. Fund Soc.*, 111 N.J. 355, 365-66, 544 A.2d 857 (N.J. 1988)). A defendant must act "with the intent to do the act and to produce the emotional distress or in deliberate disregard of a high degree of probability that emotional distress will follow." *Buckley*, 111 N.J. at 366. In addition, the conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id*. (internal quotation omitted). In New Jersey, it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of

emotional distress." *Griffin v. Tops Appliance City, Inc.,* 337 N.J. Super. 15, 766 A.2d 292, 297 (App. Div. 2001).

Here, accepting as true all of Plaintiff's allegations and construing the facts in the light most favorable to the Plaintiff, the Court finds that Plaintiff has failed to sufficiently allege a claim of intentional infliction of emotional distress against Defendant O'Grady. While Plaintiff alleges that O'Grady acted "willfully, maliciously and in wanton and reckless disregard of [his] rights and well-being[,]" he fails to present facts suggesting that O'Grady's alleged dissemination of defamatory information was in fact done with the specific intent of causing him severe emotional distress. (Compl. at ¶ 79). Moreover, he fails to allege facts demonstrating that his apparent emotional distress was so severe that "no reasonable man could be expected to endure it." *Swingle*, 2009 U.S. Dist. LEXIS 76991, at *23-24. Plaintiff's intentional infliction of emotional distress claim, in the opinion of this Court, relies solely on "a formulaic recitation of the elements of [the] cause of action," and therefore, cannot survive Defendants' Motion to Dismiss. Accordingly, Defendants' Motion to Dismiss Count Nine of Plaintiff's Amended Complaint is granted and the Court will dismiss Count Nine without prejudice.

### 5.   Count Ten: Negligent Infliction of Emotional Distress

In Count Ten of the Amended Complaint, Plaintiff asserts a negligent infliction of emotional distress claim against Defendants Taylor, Morris, Beet, Ferris, O'Grady and John and Jane Does 1 to 25. Plaintiff's negligent infliction of emotional distress claim parrots his intentional infliction of emotional claim in Count Nine, simply substitutes the word "negligent" for the word "intentional" and eliminates any reference to the Defendants having acted "willfully, maliciously and in wanton and reckless disregard" of Plaintiff's "rights and well-being[.]" (Compl. at ¶ 79). Defendants seek to dismiss Plaintiff's negligent infliction of emotional distress claim for failure to state a claim. In

addition, Defendants argue that Count Ten "must be stricken as the Defendants are afforded immunity for any such claim of negligence pursuant to the Tort Claims Act." (Defs.' Br. at 16). As previously discussed, the Court will dismiss Count Ten without prejudice insofar as this count is pled against Defendants Taylor, Morris, Beet, Ferris and John and Jane Does 1 to 25.

As an initial matter, the Court rejects Defendants' assertion that they are afforded immunity pursuant to the NJTCA. While the NJTCA does provide public employees immunity from "injur[ies] resulting from the exercise of judgment or discretion vested in them[,]" N.J.S.A. 59:3-2, this immunity does not extend to conduct "outside the scope of [their] employment[.]" N.J.S.A. 59:3-14. The alleged dissemination of defamatory statements concerning a former colleague, in the view of the Court, constitutes conduct that falls outside the scope of Defendants' employment. Accordingly, the court declines to dismiss Plaintiff's negligent infliction of emotional distress claim against Defendant O'Grady based on NJTCA immunity.

In New Jersey, a plaintiff may maintain an action for negligent infliction of emotional distress under two scenarios. First, "[a] plaintiff can demonstrate that the defendant's negligent conduct placed the plaintiff in a reasonable fear of immediate personal injury, which gave rise to emotional distress that resulted in a substantial bodily injury or sickness." *Jablonowska v. Suther*, 195 N.J. 91, 104, 948 A.2d 610 (2008). Second, a plaintiff can maintain an action for negligent infliction of emotional distress by satisfying the four elements set forth by the New Jersey Supreme Court in *Portee v. Jaffee*, 84 N.J. 88, 101, 417 A.2d 521 (N.J. 1980). These elements are: "(1) the defendant's negligence caused the death of, or serious physical injury, to another; (2) the plaintiff shared a marital or intimate, familial relationship with the injured person; (3) the plaintiff had a sensory and contemporaneous observation of the death or injury at the scene of the accident; and (4)

the plaintiff suffered severe emotional distress." *Jablonowska*, 195 N.J. at 103 (citing *Portee*, 84 N.J. at 97, 101).

Here, the Plaintiff has not alleged any facts suggesting that Defendant O'Grady was negligent. Additionally, Plaintiff has not pled any facts showing that he was placed "in reasonable fear of immediate personal injury." *Jablonowska*, 195 N.J. at 104. In fact, the Amended Complaint indicates that Plaintiff only learned that "negative comments" had been made about him after being informed by a representative of the Mercer County Sheriff's Office. (Compl. at ¶ 32). Furthermore, Plaintiff has not alleged any facts that would satisfy the elements set forth in *Portee*. Accordingly, Plaintiff has failed to state a claim for negligent infliction of emotional distress and the Court will dismiss that count in its entirety with prejudice.

### E.  Count Eleven: John and Jane Does

In Count Eleven of the Amended Complaint, Plaintiff names John and Jane Does 1 to 25 as Defendants and describes them as "individuals who participated as actors, co-conspirators, and/or aiders and abettors in the wrongful conduct" alleged in the Amended Complaint. (Compl. at ¶ 85). John and Jane Does 1 to 25 "are sued in their individual and official capacities." (*Id*.). Defendants have moved for the dismissal of the John and Jane Doe Defendants pursuant to FED. R. CIV. P. 12(b)(6).

"Doe defendants 'are routinely used as stand-ins for real parties until discovery permits the intended defendants to be installed.'" *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998) (quoting *Scheetz v. Morning Call, Inc.*, 130 F.R.D. 34, 36 (E.D. Pa. 1990) (citations omitted)). Pursuant to FED. R. CIV. P. 21, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Rule 21 has been used "to exclude John Doe parties from an action when appropriate." *Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006). The Rule has also been "invoked

to drop John Doe defendants from a case when plaintiffs failed to include specific allegations of wrong doing committed by these defendants." *Hightower v. Roman, Inc.*, 190 F. Supp. 2d 740, 754 (D.N.J. 2002). Generally, "'[f]ictitious party names may be used at least until reasonable discovery permits the actual defendants to assume their places. However, fictitious names must eventually be dismissed, if discovery yields no identities." *Williams v. State Div. of State Police*, 2012 U.S. Dist. LEXIS 72457, at *19 (D.N.J. May 24, 2012) (quoting *Atlantic Used Auto Parts v. City of Philadelphia*, 957 F. Supp. 622, 625 (E.D. Pa. 1997)); *Adams*, 461 F. Supp. 2d at 271. Therefore, at the end of discovery, unnamed fictitious parties should be dismissed if left unidentified. *See Hindes*, 137 F.3d at 155; *see also Atlantic Used Auto Parts*, 957 F. Supp. at 625.

It is unclear to the Court as to why Plaintiff included a separate count in the Amended Complaint which names Defendants John and Jane Does, but fails to assert any particular cause of action against these Defendants. These Defendants are already named in Counts One through Ten so Count Eleven is merely duplicative and redundant of the causes of action asserted earlier in the Amended Complaint. As the Court has already considered these claims within the context of Counts One through Ten, the Court will dismiss Count Eleven with prejudice while recognizing that doing so does not dismiss those claims against the John and Jane Doe Defendants which the Court has already noted may proceed. Moreover, the Court declines to exercise its authority under FED. R. CIV. P. 21 to drop the John and Jane Doe Defendants from this action at this stage of the litigation.

### F.  Defendants' Motion for a More Definite Statement Pursuant to FED. R. CIV. P. 12(e)

Defendants contend that Plaintiff's Amended Complaint fails to "delineate[] any specific wrongdoing on the part of any of the Individual Defendants that would put them on notice as to how they could be liable under each of the[] Counts." (Defs.' Br. at 15). They argue that the Plaintiff "can and should be required to set forth the specific facts to establish each cognizable cause of action as to

each Defendant." (*Id.*). Furthermore, Defendants posit that "[t]here is no justifiable reason to file such a broad-brush and ambiguous Amended Complaint as to each of the Individual Defendants." (*Id.*). Accordingly, Defendants request that the Plaintiff be ordered to make his Amended Complaint, and each specific claim as to each Defendant, more definite pursuant to FED. R. CIV. P. 12(e).

As stated above, the exercise of Rule 12(e) "should be cast in the mold of strictest necessity." *Clark*, 213 F.R.D. at 233. Here, Defendants' have failed to show that Plaintiff's Amended Complaint warrants an amendment pursuant to Rule 12(e). While this Court agrees that certain causes of action fail to give Defendants fair notice of the grounds and/or facts upon which they are based, the Court believes that this issue is best dealt with by dismissing those claims without prejudice and permitting Plaintiff to re-file an Amended Complaint that is in compliance with Rule 8 and corrects the pleading deficiencies identified in this memorandum. Accordingly, Defendants' Motion for a More Definite Statement pursuant to FED. R. CIV. P. 12(e) is denied.

## III.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part and Defendants' Motion for a More Definite Statement is denied. An appropriate Order follows.

Date: March 11, 2014                              *s/Peter G. Sheridan*
                                                  PETER G. SHERIDAN, U.S.D.J.